UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————————
KAREN YADIRA RODRIGUEZ )
GUTIERREZ and MARIA IRMA )
GUITIERREZ DURON, )
)
Plaintiffs, )
)
v. )        Civil Action. No. 18-1958 (PLF)
)
U.S. DEPARTMENT OF )
HOMELAND SECURITY, <u>et al</u>., )
)
Defendants. )
—————————————————————————

<u>OPINION</u>

Plaintiff Maria Irma Gutierrez Duron ("Ms. D.") and her eleven-year-old

grandson, J.G., entered the United States at an authorized port of entry in March 2018 to seek

asylum from gang violence in their home country of Honduras.  <u>See</u> Amended Complaint, Dkt.

No. 71, at 5; <u>see also</u> Errata, Dkt. No. 25, at 1.  Plaintiff Karen Yadira Rodriguez Gutierrez ("Ms.

G."), J.G.'s mother, was already present in the United States.  Amended Complaint at 5.  U.S.

Customs and Border Protection agents took Ms. D. and her grandson into custody shortly after

they crossed the border.  <u>Id</u>. at 34.  Immigration officials classified J.G. – who entered the United

States without a biological parent or legal guardian – as an unaccompanied alien child, <u>id</u>. at 10,

and separated him from his grandmother approximately a week after their arrival.  <u>Id</u>. at 34-35.

Ms. D. filed her claim for asylum in March 2018, <u>id</u>. at 37, and in late July 2018 she was

released from custody, apparently for the duration of the pendency of her asylum claim.  <u>See</u> <u>id</u>.

at 42.  The government continued to detain Ms. D's grandson as an unaccompanied alien child. Id. at 37.

In August 2018, Ms. D. and Ms. G. filed a civil complaint [Dkt. No. 1] and an emergency motion for a temporary restraining order [Dkt. No. 4] seeking the immediate release of J.G., among other relief.  The Court held a hearing on the motion on September 20, 2018.  The next day, the Office of Refugee Resettlement notified the Court that J.G. would be reunited with his mother on September 22, 2018.  See Notice of Release at 1.  Accordingly, the Court dismissed as moot the plaintiffs' motion for a temporary restraining order.  See September 26, 2018 Minute Order.

Ms. G. and Ms. D. filed an Amended Complaint [Dkt. No. 71] in March 2019, and this matter is now before the court on the defendants' second motion to dismiss the claims against the defendants sued in their official capacities [Dkt. No. 75], who are the only named defendants remaining in this case.  See also Defendants' First Motion to Dismiss, Dkt. No. 69; Stipulation of Dismissal, Dkt. No. 72.  Upon careful consideration of the briefs, the relevant legal authorities, and the entire record in this case, the Court will (i) deny as moot the first motion to dismiss, which is directed at a superseded complaint, and (ii) grant defendants' second motion to dismiss, which is directed at the Amended Complaint.[1]

---

[1]    The Court considered the following documents and accompanying attachments and exhibits in resolving the pending motions:  Complaint [Dkt. No. 1]; plaintiff's emergency motion for a temporary restraining order ("TRO Motion") [Dkt. No. 4]; defendants' response in opposition to the TRO motion ("Opposition to TRO Motion") [Dkt. No. 18]; Sealed Declaration [Dkt. No. 19]; defendants' errata to response in opposition to the TRO motion ("Errata") [Dkt. No. 25]; plaintiffs' reply in support of the TRO motion ("TRO Motion Reply"); defendants' notice of release of J.G. to his mother ("Notice of Release") [Dkt. No. 43]; defendants' motion to dismiss the non-Bivens claims (First Motion to Dismiss") [Dkt. No. 69]; Amended Complaint [Dkt. No. 71]; joint stipulation to dismiss the individual defendants ("Stipulation of Dismissal") [Dkt. No. 72]; defendants second motion to dismiss ("Motion") [Dkt. No. 75]; plaintiffs' response in opposition to the motion to dismiss ("Response") [Dkt. No. 77]; defendants reply in

# I.     BACKGROUND

The defendants represent that J.G. was classified as an unaccompanied alien child because he entered the United States in the company of his grandmother, rather than a biological parent or other legal guardian.  Under these circumstances, the government believed it had a statutory obligation to transfer J.G. to the custody of the Office of Refugee Resettlement ("ORR").  Opposition to TRO Motion at 2.  Defendants represent that, as soon as J.G. entered the shelter – and well before plaintiffs filed this suit – the government began to "work[] diligently" to reunite J.G. with his mother, Ms. G., who was already in the United States.  Opposition to TRO Motion at 2.  The government's efforts to satisfy its requirements and reunite Ms. G. and J.G., however, were "hindered by [Ms. G.'s] failure to timely respond to its requests for information, her unexpected movement from one location to another, and her failure to provide information about the persons who will be living with the reunited family," as required for reunification under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").  Id.  Indeed, the Amended Complaint acknowledges some of these difficulties.  See Amended Complaint at 35-36.  Finally, in September 2018 – after the Court heard argument on the TRO but before it ruled – ORR released J.G. to the custody of his mother.  He and Ms. G. are now living together in the United States, awaiting the adjudication of their asylum claims.  See Motion at 3.  Ms. D. is also living with J.G. and Ms. G.  The Court has no information to suggest that Ms. G., Ms. D., or J.G. have any concrete expectation of being returned to the custody of the United States government.

_____

support of the motion to dismiss ("Reply") [Dkt. No. 82]; and plaintiff's response to show cause order ("Show Cause Response") [Dkt. No. 85].

The Amended Complaint, filed after the family's reunification, narrows the dispute before the Court: it abandons the plaintiffs' initial claims for an injunction and money damages, see Complaint at 66, and drops all claims against the named government officials sued in their individual capacities, see id. at 1-2. See also Stipulation of Dismissal at 1. The defendants remaining before the Court are several government agencies and individuals connected with the immigration system, who are sued in their official capacities, and five unnamed John Doe defendants, sued in their individual capacities. See Amended Complaint at 1-3.[2] The Amended Complaint seeks a declaratory judgment (i) that the defendants' conduct violated the plaintiffs' substantive due process rights under the Fifth Amendment to the United States Constitution (Count I), see Amended Complaint at 46-49; and (ii) that the defendants' conduct violated the plaintiffs' procedural due process rights (Count II), see id. at 51-52. Ms. D. and Ms. G. also continue to seek attorneys' fees (Count III). See id. at 51.[3]

The named defendants moved to dismiss for lack of subject matter jurisdiction, arguing that the claims of Ms. D. and Ms. G. are moot because no actual controversy persists

---

[2]     The agency and individual defendants sued in their official capacities include the U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); U.S. Office of Refugee Resettlement ("ORR"); the Directors of ORR and USCIS; the Commissioner of CBP; the Attorney General; and the Secretaries of HHS and DHS. See Amended Complaint at 1-2. The Amended Complaint also sues five unnamed John Doe Defendants in their individual capacities. Id. at 3. The John Doe defendants are operational-level CBP or ORR employees: a field specialist for a foster program (John Doe 1); a superintendent of a detention facility that housed plaintiffs (John Doe 2); the head of a CBP Field Office (John Doe 3); and two CBP officers (John Does 4 and 5).

[3]     The Amended complaint is in other ways largely unchanged from the Complaint and, in this respect, it contains blatant factual errors. J.G. was released in September 2018. Remarkably, plaintiff's counsel failed to include this information in the March 2019 Amended Complaint, which repeatedly and incorrectly states that J.G. remains in custody. See Amended Complaint at 5, 10, 37, 40, 41, 42.

4

between the parties now that Ms. D. has been released and J.G. has been reunited with his mother.  See Motion at 2-3.  Further, the government notes that the "capable of repetition yet evading review" exception to mootness does not apply because there is no indication that the challenged separation is likely to reoccur.  See id. at 3-4.[4]  For their part, Ms. D. and Ms. G. argue that another exception to mootness – voluntary cessation – does apply, and is sufficient to preserve their claims.  Response at 5.

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress.  See, e.g., Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  The plaintiffs bear the burden of establishing that the Court has jurisdiction. See Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).

In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true.  See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017).[5]  Although the Court must grant plaintiffs the benefit of all reasonable inferences, the Court "need not accept factual inferences drawn by

---

[4]     In its presentation of the legal rules and its application of the rules to the facts of this case, defendants' motion to dismiss elides the distinction between the definition of a moot claim and the requirements for establishing an exception to the rule that moot claims must be dismissed.  See Motion at 2-4.

[5]     Defendants do not explicitly identify their motion to dismiss as a motion pursuant to Rule 12(b)(1), but the Court construes it as such because the motion's only basis for dismissal – mootness – implicates the Court's subject matter jurisdiction.  See infra at 6-11.

plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept plaintiffs' legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012). Finally, in determining whether plaintiffs have met the burden of establishing jurisdiction, the Court may consider materials beyond the pleadings where appropriate. Am. Nat'l Ins. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011); Cumis Ins. Society Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

The doctrine of mootness, on which defendants' arguments rely, is a jurisdictional inquiry. Safari Club Int'l v. Jewell, 842 F.3d 1280, 1285, 1287 (D.C. Cir. 2016); Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994) ("[M]ootness goes to the jurisdiction of this court."). Accordingly, motions to dismiss for mootness are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Han v. Lynch, 223 F. Supp. 3d. 95, 102 (D.D.C. 2016). "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies." J.D. v. Azar, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (quoting Honeywell Int'l v. Nuclear Regulatory Comm'n, 628 F. 3d 568, 576 (D.C. Cir. 2010)). Once a court determines that a claim is moot, it lacks jurisdiction to entertain the claim and must dismiss it. Han v. Lynch, 223 F. Supp. 3d at 103.

## III. ANALYSIS

### A. The Court Lacks Jurisdiction over the Plaintiffs' Claims

The allegations in the Amended Complaint are troubling and raise questions of significant constitutional import. The family separation policies at issue here have "directly and substantially burdened" asylum seekers' constitutional right to family integrity. Jacinto-Castanon de Nolasco v. U.S. Immigration and Customs Enforcement, 319 F. Supp. 3d 491, 501

(D.D.C. 2018); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 119-20 (D.D.C. 2018). Nevertheless, at this stage of the instant case, the plaintiffs' claims are moot, and no exception to the mootness doctrine applies. The Court therefore lacks subject matter jurisdiction to consider those claims.

### 1. Plaintiffs' Claims are Moot

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d at 576 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). "Under Article III of the United States Constitution [courts] may only adjudicate actual, ongoing controversies." Reid v. Hurwitz, 920 F.3d 828, 832 (D.C. Cir. 2019) (quotations omitted). Changing circumstances can moot a previously valid claim. "Under the mootness doctrine, [courts] cannot decide a case if '"events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Id. (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

In this case, the parties frame their argument primarily in terms of exceptions to the mootness rule, and do not explicitly engage the question of whether plaintiffs' claims are moot in the first instance.[6] But the Court always must confirm its own subject matter jurisdiction. In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay, 700 F. Supp. 2d 119, 126 (D.D.C. 2010) ("A mootness issue quite clearly can

---

[6]     On June 25, 2019, the Court issued a show cause order requiring Ms. D. and Ms. G. to demonstrate why her claims should not be dismissed as moot. See Dkt. No. 83. Their response contained no argument that the claims are not, in fact, moot – only the argument that the voluntary cessation exception to mootness should apply. See Show Cause Response, Dkt. No. 85, at 3-4.

be raised <u>sua sponte</u> if not addressed by the parties."). The facts of this case demand

consideration of whether the plaintiffs' claims are moot in the first instance.

The Court finds that they are. The plaintiffs' claims arise from – and depend on –

three related conditions: (i) defendants' pre-asylum detention of Ms. D. and J.G. after they came

into the United States at a legal point of entry; (ii) defendants' allegedly unlawful decision to

separate J.G. from his grandmother during this detention; and (iii) the challenged immigration

policy under which defendants ostensibly acted in injuring the plaintiffs.[7] Since the plaintiffs

initiated this case, all of these conditions have changed in ways that materially affect the question

of whether any live controversy persists between the parties. First, Ms. D. and J.G. are no longer

detained by the government. Second, J.G. has been reunited with his family. Both plaintiffs and

J.G. are at liberty in the United States without apparent limitation during the pendency of their

asylum proceedings; they are not suspected of criminal activity that could return them to

custody, and there is no indication whatsoever that the government will otherwise seek to detain

plaintiffs before their asylum claims are resolved. Third, the policy and practice that is the focus

of the Amended Complaint has been changed and, to a certain extent, enjoined by a federal

court. Several months after the defendants separated Ms. D. and J.G., President Trump issued an

Executive Order rescinding and clarifying several aspects of the Zero Tolerance policy that is the

---

[7] On April 6, 2018, the Attorney General of the United States announced a "zero-tolerance" immigration policy, under which all immigrants unlawfully crossing the United States-Mexico border would be subject to criminal prosecution, which frequently resulted in their forced separation from the young children traveling with them. <u>See</u> <u>Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't</u>, 319 F. Supp. 3d at 494–95. Plaintiffs appear to believe that they suffered injury under this policy, <u>see</u> Amended Complaint at 4; 6-7, even though Ms. D. and J.G. entered the United States legally by presenting at the San Ysidro Port of Entry and requesting asylum. <u>See</u> Errata at 25.

focus of the Amended Complaint.[8]  And Judge Dana Sabraw, who is supervising class action

litigation of the family separation practices at issue in this case, has issued a class-wide

preliminary injunction.  The injunction prohibits a wide variety of government

defendants – including every one of the named defendants in this case – from "detaining class

members in DHS custody without and apart from their minor children, absent a determination

that the parent is unfit or presents a danger to the child," unless the parent declines reunification.

See Ms. L. v. U.S. Immigrations and Customs Enforcement, 310 F. Supp. 3d 1133, 1149 (S.D.

Cal. 2018).[9]

In the context of these changed circumstances, the relief that Ms. D. and Ms. G.

seek would not resolve any question that would "presently affect the parties' rights [or] have a

more-than-speculative chance of affecting them in the future." Reid v. Hurwitz, 920 F.3d at 832

(quoting Clarke v. United States, 915 F.2d at 70).  Counts I and II seek a declaratory judgment

---

[8]      The Executive Order states the government's policy of housing parents and biological children together.  See Executive Order 13841, Affording Congress an Opportunity to Address Family Separation § 1, 88 Fed. Reg. 29435  (June 20, 2018).  See also State of West Va. v. Environmental Protection Agency, Case 15-1363, Dkt. No. 1806952 (D.C. Cir. Sept. 17, 2019) (dismissing as moot a challenge to an executive branch policy after a subsequent executive order rescinded the plan).

[9]      Even if Ms. G. and J.G. were to leave the United States, re-enter the United States, and be separated by the government – and there is no information in the record to establish that this is even a remote likelihood – they likely would be members of the nationwide class that is protected by Judge Sabraw's Order, the practical effect of which will be to prohibit defendants from separating Ms. G. and J.G. in the manner described in the Amended Complaint. On March 8, 2019, Judge Sabraw modified the class definition to include "[a]ll adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017, who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained in ORR custody, ORR foster care, or DHS custody . . . ." Ms. L. v. U.S. Immigrations and Customs Enforcement, 330 F.R.D. 284, 292 (S.D. Cal. 2019).  (That definition does not include Ms. D., who was separated from her grandchild.)

that the separation of J.G from his mother and grandmother violated the plaintiffs' constitutional and statutory rights. See Amended Complaint at 46-51 (seeking a declaratory judgment under, inter alia, the Declaratory Judgment Act, 29 U.S.C. § 2201).[10] Ms. G. and Ms. D. appear to seek a declaratory judgment that the government's *prior* conduct under a rescinded policy – the "forced separation of Ms. G. from her son and Ms. D. from her grandson" – was unconstitutional. See Amended Complaint at 49; see also id. at 50. But a declaratory judgment is a forward-looking remedy: it is a statement of "the rights and other legal relations" of the parties, see 28 U.S.C. § 2201, that is generally sought when an actual controversy exists but *before* it has "reached the stage at which either party may seek a coercive remedy." See Malibu Media, LLC v. Parsons, No. CV 12-1331 (BAH), 2013 WL 12324463, at *9 (D.D.C. May 31, 2013) (quoting 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2751 (3d ed. 2013)) (dismissing defendants' declaratory judgment claims as "superfluous" and "redundant" once the plaintiff had sued the defendant and defendant had raised affirmative defenses). Where an announced policy is "now inoperative, a declaration that it was unlawful would amount to nothing more than an advisory opinion." See Planned Parenthood of Wisconsin, Inc. v. Azar, 2019 WL 6121445 at *2 (D.C. Cir. Nov. 19, 2019). Rather, the "purpose of the Declaratory Judgment Act is to allow the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC, 313 F. Supp. 3d 40, 45 (D.D.C. 2018).

Plaintiffs' request for a declaratory judgment would not advance that purpose. Declaratory judgments are discretionary, appropriate when there is "a substantial controversy,

---

[10]    The Amended Complaint abandons the original Complaint's request for damages and injunctive relief. See Complaint at 66.

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC, 313 F. Supp. 3d at 45. Those requirements are not met here, even if the Court were to assume that Ms. G. and Ms. D. request a declaratory judgment concerning the legality of defendants' hypothetical future conduct. Ms. G. has regained custody of J.G. and they are living together in the United States. Ms. D. lives with Ms. G. and J.G. The Amended Complaint does not plead facts showing that the parties have any immediate adverse legal interests – no facts, for example, showing that any additional pre-asylum detention is reasonably likely. And there are no facts showing that any of plaintiffs' future prospects would be affected by a declaratory judgment that defendants' *prior* conduct, or resumption of that conduct, is illegal. Cf. J.D. v. Azar, 925 F.3d at 1307 (finding that a particular claim of a class representative "became moot in late December 2017, when she left ORR custody and was no longer subject to [the] ORR[] policies" challenged in her lawsuit).

Under these circumstances, and on the facts currently before it, the Court must conclude that a declaratory judgment would have no "practical effect" on any live dispute between the parties. Claims I and II are moot. See Doe v. Rumsfeld, 172 Fed App'x 327, 328 (D.C. Cir. 2006).

### 2. No Exception to the Doctrine of Mootness Applies Here

Ms. D. and Ms. G. argue that they are entitled to the benefit of one of the exceptions to the rule that courts lack subject matter jurisdiction over moot disputes. The Supreme Court has held that, where voluntary cessation of a challenged practice causes a case to become moot, federal courts may still determine the legality of the practice in certain circumstances. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

189 (2000). Specifically, where a defendant's voluntary conduct moots a claim, Courts will only dismiss it if (i) "there is no reasonable expectation . . . that the alleged violation will recur," and (ii) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Aref v. Lynch, 833 F.3d 242, 251 (D.C. Cir. 2016). And "a defendant claiming that its voluntary [cessation] moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 190.[11]

Although the voluntary cessation exception is the central element of plaintiffs' defense to mootness, the defendants do not explicitly engage with the requirements of the voluntary cessation exception or attempt to meet their burden to disprove the exception. But the Court always has the obligation to determine whether it has subject matter jurisdiction. See Han v. Lynch, 223 F. Supp. 3d at 103. The Court's own review of the record makes clear that plaintiffs cannot qualify for the voluntary cessation exception.

The decisive consideration for the instant motion is that, "[f]or the [voluntary cessation] exception to apply, the [defendants'] voluntary cessation must have arisen *because of*

---

[11]    A separate exception to mootness exists for disputes that are "capable of repetition yet evading review," but it need not be considered here. That exception applies to caes where "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration" and where "there is a reasonable expectation that the same complaining party will be subject to the same action again." See United States v. Weston, 194 F.3d 145, 148 (D.C. Cir. 1999); see also Planned Parenthood of Wisconsin, Inc. v. Azar, 2019 WL 6121445 at *3. The government defendants frame their arguments primarily in terms of this exception. See Motion at 2-3. Ms. D. and Ms. G., however, "do not dispute" that the capable of repetition exception does not apply to this case. Response at 8. Even so, defendants have continued to rely on arguing the scope of the capable of repetition exception. Reply at 1. That exception is of no consequence, however, if plaintiff can successfully establish that the independently sufficient voluntary cessation exception *does* apply. However counsel has chosen to present the "mootness argument that defendants are making," Reply at 1, it is apparent that defendants' voluntary conduct produced the state of affairs that defendants believe has rendered the case moot.

the litigation." Sze v. Immigration and Nationality Service, 153 F.3d 1005, 1008 (9th Cir. 1998) (emphasis in original). See also Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) ("The voluntary-cessation exception to the mootness doctrine . . . does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation."). That requirement alone bars operation of the voluntary cessation exception in this case.

   Plaintiffs believe that the timing of the government's release of J.G., coupled with its opposition to the plaintiffs' motion for a TRO, "demonstrates that [d]efendants' voluntary cessation of their challenged conduct by returning J.G. to his mother was in response to this litigation." Response at 5. The Court notes this confluence of events, but cannot conclude that the reunification was "because of" the litigation. Defendants' counsel have made signed and sworn representations that "as soon as J.G. entered the [ORR] shelter in March 2018, efforts were undertaken by its staff to reunite him with his mother." Opposition to TRO Motion at 6. That is, those efforts began in earnest more than five months before plaintiffs filed this suit. The delay in reunification "has not been due to government action but to the mother's actions and inactions." See id. at 8. Specifically, reunification was delayed by

> [Ms. G.'s] failure to timely respond to its requests for information, her unexpected movement from one location to another, and her failure to provide information about the persons who will be living with the reunited family, information that is required so that ORR can make a determination that releasing J.G. to his mother is consistent with the requirements of the Trafficking Victims Protection Reauthorization Act of 2008 ('TVPRA').

Id. at 2.

   The plaintiffs contend that the defendants failed to interpret and apply the TVPRA appropriately, but have not contested the government's factual claims about Ms. G.'s compliance

with the defendants' requests for information.  <u>See</u> TRO Motion Reply at 2-5.[12]  Those

impediments are important because the defendants believed they had a "statutory

obligation  . . . to [e]nsure that the custodian to whom J.G. is released is capable of providing for

the child's physical and mental well-being," <u>id</u>. at 8,  and, for quite some time, they lacked the

information they needed in order to do so.  Defendants' TRO briefing and the accompanying

sealed declaration persuasively recount specific instances of the difficulty that the government

encountered in reuniting J.G. with his mother.  That information is sufficient to establish that the

government's decision to *begin* reunification proceedings was independent of this litigation.[13]

The fact that the government *completed* the reunification process just after a hearing in this

litigation does not, without more, establish that the reunification was "because of" this lawsuit.

For this reason, the voluntary cessation doctrine does not apply, and plaintiffs' claims are moot

as to the named defendants who filed the instant motion to dismiss.

   Plaintiffs' claims are also moot as to the five John Doe defendants sued in their

individual capacities, none of whom has been served or has appeared in this litigation.  Although

these defendants have not filed a motion to dismiss, the foregoing analysis applies with similar

force to the John Doe defendants.  There is no reason to suppose that an active controversy

persists – or will exist – between plaintiffs and any particular field-level ORR or CBP employee

---

[12]  The government's interpretation of the TVPRA, and its classification of J.G. as an unaccompanied minor, are not before the Court.  The government's view of its administrative requirements – and the manner in which Ms. G. complied with them – are relevant to the mootness analysis only to the extent they illuminate the causes of the government's voluntary cessation.

[13]  Since the Court finds that the reunification did not occur "because of" the litigation, the voluntary cessation exception to mootness is inapplicable.  Accordingly, the Court need not determine whether "there is no reasonable expectation . . . that the alleged violation will recur" or whether "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  <u>Aref v. Lynch</u>, 833 F.3d at 251.

that plaintiffs encountered during their initial detention.  The Court concludes <u>sua</u> <u>sponte</u> that the claims are moot as to all five John Doe defendants.

Accordingly, the Court will dismiss Counts I and II, as to all defendants, for lack of subject matter jurisdiction.  Because plaintiffs have not prevailed on any of their substantive claims, they are not entitled to attorneys' fees.  <u>See</u> 28 U.S.C. § 2412.  Count III, therefore, will also be dismissed.  The motion to dismiss the Amended Complaint will be granted in full.  The first motion to dismiss, directed at the now-superseded initial complaint, will be denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny as moot the first motion to dismiss [Dkt. No. 69], and the Court will grant the motion to dismiss the Amended Complaint [Dkt. No. 75].  A separate order consistent with this opinion will issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  November 21, 2019